CORNELL UNIVERSITY, Plaintiff-Appellant,

v.

Norman D. ROTH, Defendant-Respondent.

Court of Appeals

*No. 88–0962. Submitted on briefs February 6, 1989.—Decided March 28, 1989.*

(Also reported in 439 N.W.2d 154.)

For the appellant the cause was submitted on the brief of *Walter D.H. Ching* and *Loeb & Ching, S.C.,* of Madison.

For the respondent the cause was submitted on the brief of *John A. Heibl* and *Heibl, Heibl & Crisafi,* of Madison.

Before Gartzke, P.J., Dykman and Eich, JJ.

DYKMAN, J. Cornell University appeals from a judgment dismissing its complaint alleging nonpayment of promissory notes. The issues[1] are whether the trial court's finding that Norman Roth's student deferment ended June, 1978 is clearly erroneous and whether the trial court erred by concluding that the statute of limitations[2] barred Cornell's cause of action against Roth. Although we defer to the trial court's factual determination as to the date the statute of limitations began to run, we conclude that Roth's subsequent

---

[1]The parties do not raise and we do not address the rule that each scheduled installment payment on a note constitutes a separate obligation. *See* cases annotated in 1A C.J.S. *Actions* sec. 186, p. 641 nn. 51–52 (1985).

[2]The parties agree that Wisconsin's six-year statute of limitations, sec. 893.43, Stats., governs this action.

payments tolled and recommenced the statutory time period for bringing this action. We therefore reverse and remand for proceedings consistent with this opinion.

From 1973 to 1976 Roth attended Cornell University and periodically borrowed from Cornell to help finance his education. Roth's loans came from three different sources although all were handled by Cornell's Financial Aid Office: (1) a Federally Insured Student Loan account (FISL); (2) a bursar account; and (3) a National Direct Student Loan account (NDSL), represented by seven notes of various dates and amounts. According to the terms of the NDSL notes, repayment was to begin nine months after Roth ceased to carry at least one-half the normal full time academic workload. Roth left Cornell on September 1, 1976 but was granted a student status deferment until June, 1978 while he was preparing his dissertation. He graduated in August, 1978.

Roth made his first payment on his student loans on May 21, 1979. Of that $60 payment, Cornell applied $30 toward the NDSL and $30 toward the FISL. Roth also made intermittent payments between May 21, 1979 and February 11, 1985.

Cornell sued to recover on the three accounts. At trial both parties reached an agreement as to the bursar and the FISL accounts, leaving only the NDSL account in dispute. Based on the testimony of an assistant bursar for Cornell, the trial court found that Roth ceased to carry a one-half minimum workload when his student status deferment expired in June, 1978. This meant that repayment should have begun in March, 1979. The trial court did not address the question of whether subsequent payments by Roth tolled the six-year statute of limitations. The court concluded that because Roth missed his first payment, he was in

default as of March, 1979 and this started the statute of limitations running. The statute of limitations would have run in March, 1985. Because Cornell did not bring this action until April, 1985, the trial court dismissed Cornell's complaint.

The trial court found that Roth ceased to carry a one-half workload in June, 1978 when his student status deferment expired. Cornell contests this finding. Findings of a trial court will not be upset on appeal unless they are clearly erroneous. Sec. 805.17(2), Stats. The assistant bursar testified that Roth's separation date from Cornell was June, 1978. In view of this testimony, we cannot say that the trial court's finding was clearly erroneous.

The next issue is whether Roth's $60 payment on May 21, 1979 tolled the statute of limitations and set it running anew from that date. The trial court did not address this question. However, because the relevant facts are undisputed, the legal significance of these facts presents a legal question which we may review de novo. *Ball v. District No. 4, Area Board,* 117 Wis. 2d 529, 537, 345 N.W.2d 389, 394 (1984).

Cornell chose to apply $30 of the May 21, 1979 payment to Roth's NDSL account. The record contains no evidence that Roth requested that the payment be applied differently. Under the creditor's choice doctrine, a creditor may apply a loan payment as it chooses to a debtor's multiple debts unless the debtor directs how to apply the payment. *Waukesha Concrete v. Capital Indemnity,* 127 Wis. 2d 332, 341, 379 N.W.2d 333, 337 (Ct. App. 1985). We recently discussed and approved this practice in *Production Credit Ass'n v. Laufenberg,* 143 Wis. 2d 200, 207–08, 420 N.W.2d 778, 780 (Ct. App.

1988). At a minimum, the statute recommenced running in May, 1979 and expired in May, 1985, one month after plaintiff began this action. *See St. Mary's Hospital Medical Ctr. v. Tarkenton*, 103 Wis. 2d 422, 424, 309 N.W.2d 14, 16 (Ct. App. 1981) (partial payment on obligation starts statute of limitations running from payment date). Cornell's complaint was not time-barred.

Finally, Roth claims that his May 21, 1979 payment could only have tolled the statute of limitations as to one of the NDSL notes and that therefore, the statute ran on the other six notes. However, all seven notes had the same repayment starting date, maturity date and interest rate, and Cornell treated them as one debt. The record contains no evidence that Cornell applied the $30 payment to only one of the seven NDSL notes. Under the creditor's choice doctrine, Cornell was free to apply payments as it desired. Because Cornell treated the notes as one debt, Roth's payment was applied equally to each of the seven notes. Thus, the May 21, 1979 payment tolled the statute of limitations on each of the seven NDSL notes.

*By the Court.*—Judgment reversed and cause remanded for proceedings consistent with this opinion.